# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 03-3982

_____

Wilford Banks,
      Appellant,

v.

International Union Electronic,
Electrical, Technical, Salaried and
Machine Workers; Communications
Workers of America; Council of
Industrial Organizers,

      Appellees.

*
*
*
*
*   Appeal from the United States
*   District Court for the
*   Eastern District of Arkansas.
*
*
*
*
*
*
*

_____

Submitted: September 14, 2004
Filed: December 3, 2004

_____

Before RILEY, LAY, and SMITH, Circuit Judges.

_____

SMITH, Circuit Judge.

Wilford Banks ("Banks") appeals the dismissal of his case. The district court[1] found res judicata and collateral estoppel barred Banks from suing International Union of Electrical Workers-Communication Workers of America ("IUE-CWA") and

---

[1] The Honorable James M. Moody, United States District Judge for the Eastern District of Arkansas.

Council of Industrial Organizers ("CIO") a second time where the second suit was based upon the same factual allegations as a prior suit that produced a judgment in Banks's favor. We affirm.

## I. *Background*

Banks was employed by IUE-CWA. Employees of IUE-CWA are members of CIO. CIO represents them in employment disputes with IUE-CWA pursuant to a collective bargaining agreement negotiated between IUE-CWA and CIO. Banks filed suit ("*Banks I*") in the Eastern District of Arkansas against IUE-CWA and CIO claiming violations of Title VII, 42 U.S.C. §§ 1985 and 1988, the National Labor Relations Act, as amended, and the Labor Management Relations Act ("LMRA"). Specifically, Banks alleged that IUE-CWA violated express seniority provisions in the collective bargaining agreement and harassed Banks through arbitrary transfers to work locations. Additionally, Banks alleged that IUE-CWA improperly changed his job assignment and his job requirements to require Banks to keep a detailed written log of his activities and to report those activities to his superiors. Banks also complained about the revocation of his possession and use of a personal computer that Banks described as vital to the performance of his job. Banks alleged that these actions were discriminatory, retaliatory, in breach of the collective bargaining agreement, and for the purpose of keeping black workers from organizing. Lastly, Banks alleged that CIO breached its duty to represent him in the grievance process under the collective bargaining agreement.

CIO filed a motion to dismiss for failure to state a claim and the district court granted CIO's motion. IUE-CWA then terminated Banks. After his termination, Banks amended his complaint adding more Title VII violations against IUE-CWA, including a claim of retaliation. Banks's amended pleadings alleged only Title VII violations. In response to his termination, Banks also filed a grievance with CIO. In that grievance, Banks protested and alleged that IUE-CWA retaliated and terminated him

for filing a complaint with the Equal Employment Opportunity Commission ("EEOC") and for helping other black employees file EEOC complaints.

Banks and IUE-CWA ultimately settled *Banks I* pursuant to Rule 68 of the Federal Rules of Civil Procedure. That settlement covered all claims brought by Banks, as amended, including all claims related to Banks's termination. Pursuant to the parties' agreement, the district court entered judgment for Banks against IUE-CWA. Banks then requested CIO take his termination grievance to arbitration. CIO refused the request on the grounds that the facts involved in the grievance were resolved by the settlement and that an arbitrator would rule the case barred by res judicata.

Subsequently, Banks filed this suit ("*Banks II*") in the Eastern District of Arkansas and named IUE-CWA and CIO as defendants. In *Banks II*, Banks repeated his prior allegations of LMRA and Title VII violations. Banks re-alleged that IUE-CWA changed his job assignment and his job requirements to require Banks to keep a detailed written log of his activities and to report those activities to his superiors and that IUE-CWA arbitrarily revoked possession and use of his personal computer. Banks also re-alleged that CIO ignored grievances that he filed pursuant to the collective bargaining agreement. Finally, Banks re-alleged that IUE-CWA unlawfully terminated him in retaliation for helping a fellow employee prepare an EEOC complaint. There were no new facts alleged in the *Banks II* complaint that were not alleged in the *Banks I* complaint.

IUE-CWA and CIO brought separate motions to dismiss. IUE-CWA argued that the *Banks II* complaint was barred by the doctrine of res judicata. CIO argued that the *Banks II* complaint was barred by the doctrine of collateral estoppel. CIO also argued that Banks failed to state a claim against CIO. The district court ruled that the underlying facts of *Banks I* and *Banks II* were identical and thus the claims alleged in *Banks II* against IUE-CWA were barred by res judicata. The district court also

ruled that Banks was collaterally estopped from litigating his *Banks II* claims against CIO. As a result, dismissal was ordered and judgment in favor of IUE-CWA and CIO was entered into the record. Banks now seeks reversal of the district court's order of dismissal and judgment in favor of IUE-CWA and CIO.

## II. *Discussion*
### A. *Res Judicata*

We review a district court's dismissal decision on grounds of res judicata de novo. *Lundquist v. Rice Mem'l Hosp.*, 238 F.3d 975, 976–77 (8th Cir. 2001). The preclusion principle of res judicata prevents "the relitigation of a claim on grounds that were raised or could have been raised in the prior suit." *Lane v. Peterson*, 899 F.2d 737, 741 (8th Cir. 1990). We undertake a three part inquiry to determine whether res judicata applies addressing these issues: (1) whether the prior judgment was rendered by a court of competent jurisdiction; (2) whether the prior judgment was a final judgment on the merits; and (3) whether the same cause of action and the same parties or their privies were involved in both cases. *Id*. Neither party disputes that the first two requirements are met.

With regard to the third requirement of res judicata, we "adopted the position of the Restatement (Second) of Judgments in determining whether two causes of action are the same for res judicata purposes." *Id.* at 742. Section 24 of the Restatement (Second) of Judgments provides that:

> When a valid and final judgment rendered in an action extinguishes the plaintiff's claim pursuant to the rules of merger or bar[,] . . . the claim extinguished includes all rights of the plaintiff to remedies against the defendant with respect to all or any part of the transaction, or series of connected transactions, out of which the action arose.
>
> What factual grouping constitutes a 'transaction,' and what groupings constitute a 'series,' are to be determined pragmatically, giving weight

-4-

to such considerations as whether the facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations or business understanding or usage.

RESTATEMENT (SECOND) OF JUDGMENTS § 24. Thus, "a claim is barred by res judicata if it arises out of the same nucleus of operative facts as the prior claim." *Lane*, 899 F.2d at 742 (citations omitted); *see also Ruple v. City of Vermillion*, 714 F.2d 860, 861 (8th Cir. 1983).

Banks does not dispute that *Banks I* and *Banks II* arose out of the same nucleus of operative facts. Instead, Banks erroneously argues that because *Banks I* was a Title VII case and *Banks II* was a LMRA case, *Banks I* and *Banks II* represent separate and distinct causes of action or claims. As stated in *Lane*, "reliance . . . on different substantive law and new legal theories does not preclude the operation of res judicata. . . . [W]here a plaintiff fashions a new theory of recovery or cites a new body of law that was arguably violated by a defendant's conduct, res judicata will still bar the second claim if it is based on the same nucleus of operative facts as the prior claim." *Lane*, 899 F.2d at 744. In effect, "res judicata bars relitigation not only of those matters that were actually litigated, but also those which could have been litigated in the earlier proceeding." *King v. Hoover Group, Inc.*, 958 F.2d 219, 223 (8th Cir. 1992).

Banks also argues that *Lawlor v. Nat'l Screen Services*, 349 U.S. 322 (1955), and *Alexander v. Gardner-Denver Co.*, 415 U.S. 36 (1974), preclude the application of res judicata in this case. Both *Lawlor* and *Alexander* are distinguishable from the present case.[2] Unlike in *Lawlor*, *Banks II* fails to allege additional facts not in

---

[2]In *Lawlor*, an action was brought to recover treble damages for alleged violations of federal antitrust laws. *Lawlor*, 349 U.S. at 323. A previous suit had been settled and dismissed with prejudice. *Id.* The subsequent suit named additional

existence at the time *Banks I* was filed. In fact, the LMRA violations alleged in *Banks II* were originally alleged in *Banks I*. Banks chose to abandon those claims after amending his complaint. Unlike in *Alexander*, the district court's res judicata ruling in *Banks II* was not based on an arbitration decision, but rather a final judgment by a federal district court. Moreover, *Banks I*'s claims against IUE-CWA were not based

---

defendants and alleged anti-trust violations that occurred after the previous suit had been filed. *Id.* at 325. Dismissal on the grounds of res judicata was granted by the district court and affirmed on appeal. *Id.* However, the United States Supreme Court reversed, reasoning that the two suits were not based on the same cause of action because "the conduct presently complained of was all subsequent to the . . . [previous] judgment." *Id.* at 328, 330. Moreover, new antitrust violations were alleged. *Id.* at 328. The Court held that "[w]hile the . . . [previous] judgment precludes recovery on claims arising prior to its entry, it cannot be given the effect of extinguishing claims which did not even then exist and which could not possibly have been sued upon in the previous case." *Id.*

In *Alexander*, plaintiff filed a grievance under the collective-bargaining agreement between his employer and his union. *Alexander*, 415 U.S. at 39. The collective-bargaining agreement prohibited racial discrimination but, at least initially, plaintiff made no claim of racial discrimination. *Id.* However, plaintiff later amended his claim to do so. *Id.* at 42. After an arbitrator ruled that there was no violation of the collective-bargaining agreement, plaintiff filed a Title VII claim in the United States District Court for the District of Colorado. *Id.* at 43. The district court dismissed the suit on grounds of res judicata and the Tenth Circuit affirmed. *Id.* The Court reversed and held that "while Title VII does not speak expressly to the relationship between federal courts and the grievance-arbitration machinery of collective-bargaining agreements[,] . . . [t]here is no suggestion in the statutory scheme that a prior arbitral decision either forecloses an individual's right to sue or divests federal courts of jurisdiction." *Id.* at 47. The Court reasoned that "[i]n submitting his grievance to arbitration, . . . [plaintiff sought] to vindicate his contractual right under a collective bargaining agreement. By contrast, in filing a lawsuit under Title VII, . . . [plaintiff asserted] independent statutory rights accorded by Congress." *Id.* at 49-50. As a result, plaintiff's Title VII claim was not barred by res judicata. *Id.* at 59-60.

on the grievance-arbitration machinery of his collective-bargaining agreement, but statutory rights under LMRA that could have been and were originally brought in the first lawsuit. Banks's LMRA claims are barred here because Banks voluntarily amended his complaint in *Banks I* to exclusively allege Title VII violations and by that amendment, abandoned or dismissed his LMRA claims. Res judicata now bars Banks from relitigating those claims.

This reasoning does not apply to Banks claims against CIO, as, in *Banks I*, CIO was dismissed without prejudice and CIO was not a party to the Rule 68 settlement. We now examine the district court's ruling that Banks's claims against CIO in *Banks II* were barred by collateral estoppel.

## B. *Collateral Estoppel*

A district court's rulings on issues of law, including the application of collateral estoppel, are reviewed de novo. *Nat'l Fire Ins. Co. v. Terra Indus., Inc.*, 346 F.3d 1160, 1164 (8th Cir. 2003) (citations omitted). "Collateral estoppel 'bars the relitigation of factual or legal issues that were determined in a prior . . . court action, and applies to bar relitigation in federal court of issues previously determined.'" *In re Elisabeth Scarborough*, 171 F.3d 638, 641 (8th Cir. 1999); *see also Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 326 (1979). "Originally, collateral estoppel was limited by the principle of mutuality, which provided that 'neither party could use a prior judgment as an estoppel against the other unless both parties were bound by the judgment.'" *Lane*, 899 F.2d at 741 (citation omitted). Under federal law, the mutuality requirement has long been abandoned and a party may now "rely on collateral estoppel even though he or she is not bound by the prior judgment if the party against whom it is used had a full and fair opportunity and incentive to litigate the issue in the prior action." *Id.*

Banks's claim against CIO for breach of duty of fair representation cannot succeed absent a showing that his underlying claim against IUE-CWA is meritorious.

*See DiPinto v. Sperling*, 9 F.3d 2, 4 (1st Cir. 1993). Banks cannot relitigate the merits of his claims against IUE-CWA because those claims are barred by res judicata. As a result, Banks is collaterally estopped from litigating his claims against CIO.

### III. *Conclusion*

Banks had a full and fair opportunity, and did litigate Title VII and LMRA claims against IUE-CWA in his prior action. The doctrine of res judicata now bars Banks from relitigating those claims in this action. The doctrine of collateral estoppel also bars Banks from litigating any claims arising from the same facts against CIO.

The judgment of the district court is affirmed.

_____