# United States Court of Appeals for the Federal Circuit

06-1077

TRANSCLEAN CORPORATION, JAMES P. VIKEN, JON A. LANG,
and DONALD E. JOHNSON,

Plaintiffs-Appellants,

v.

JIFFY LUBE INTERNATIONAL, INC.,

Defendant-Appellee,

and

REGIONAL CAR WASH DISTRIBUTORS, INC., WALT GISLASON (doing business as
Walt's Soft Car Wash), and MIKE'S IN AND OUT 10 MINUTE OIL CHANGE,

Defendants-Appellees,

and

INDY LUBE, INC.,

Defendant-Appellee,

and

FRESH START, INC., LUBRICATION TECHNOLOGIES, INC., LAYNE R. BASE (doing
business as Heartland Express Lube), and PERFECT "10" QUICK LUBE, INC.,

Defendants-Appellees,

and

ULTRA LUBE, INC.,

Defendant,

and

BOB CLEMONS (doing business as Wonder Lube), BILL CLARK OIL CO., INC., ROYAL
LUBE SERVICE, INC., 13 NORTH EXPRESS LUBE, INC.,
SPOT'S QUICK LUBE, INC., and WHITE BEAR TIRE & AUTO, INC.,

Defendants.

Alan M. Anderson, Fulbright & Jaworski L.L.P, of Minneapolis, Minnesota, argued for plaintiffs-appellants Transclean Corporation, et al.  With him on the brief was Christopher A. Young.

James W. Poradek, Faegre & Benson LLP, of Minneapolis, Minnesota, argued for defendant-appellee Jiffy Lube International, Inc.  With him on the brief were David J.F. Gross and Timothy E. Grimsrud.

Gregory R. Anderson, Anderson Larson Hanson & Saunders, P.L.L.P, of Willmar, Minnesota, for defendants-appellees Regional Car Wash Distributors, Inc., et al.

Robert W. Gutenkauf, Gray, Plant, Mooty, Mooty & Bennett, of Minneapolis, Minnesota, for defendant-appellee Indy Lube, Inc..

David Jon Hoiland, Law Office of David Jon Hoiland, of Minneapolis, Minnesota, for defendants-appellees Fresh Start Inc., et al.

Appealed from:  United States District Court for the District of Minnesota

Senior Judge Paul A. Magnuson

# United States Court of Appeals for the Federal Circuit

06-1077

TRANSCLEAN CORPORATION, JAMES P. VIKEN, JON A. LANG,
and DONALD E. JOHNSON,

Plaintiffs-Appellants,

v.

JIFFY LUBE INTERNATIONAL, INC.,

Defendant-Appellee,

and

REGIONAL CAR WASH DISTRIBUTORS, INC., WALT GISLASON (doing business as
Walt's Soft Car Wash), and MIKE'S IN AND OUT 10 MINUTE OIL CHANGE,

Defendants-Appellees,

and

INDY LUBE, INC.,

Defendant-Appellee,

and

FRESH START, INC., LUBRICATION TECHNOLOGIES, INC., LAYNE R. BASE (doing
business as Heartland Express Lube), and PERFECT "10" QUICK LUBE, INC.,

Defendants-Appellees,

and

ULTRA LUBE, INC.,

Defendant,

and

BOB CLEMONS (doing business as Wonder Lube), BILL CLARK OIL CO., INC.,
ROYAL LUBE SERVICE, INC., 13 NORTH EXPRESS LUBE, INC.,
SPOT'S QUICK LUBE, INC., and WHITE BEAR TIRE & AUTO, INC.,

Defendants.

DECIDED:  January 18, 2007

Before MICHEL, <u>Chief Judge</u>, PLAGER, <u>Senior Circuit Judge</u>, and BRYSON, <u>Circuit Judge</u>.

PLAGER, <u>Senior Circuit Judge</u>.

Transclean Corporation, James P. Viken, Jon A. Lang, and Donald E. Johnson (collectively "Transclean") brought suit against Bridgewood Services, Inc. ("Bridgewood"), alleging that the automatic transmission fluid changing machine manufactured and sold by Bridgewood, the "T-Tech machine," infringed Transclean's patent.  Transclean obtained a judgment in its favor, including a damages award of $1,874,500.  The judgment and award were affirmed on appeal.  <u>Transclean Corp. v. Bridgewood Servs., Inc.</u>, 290 F.3d 1364 (Fed. Cir. 2002) ("<u>Transclean I</u>").

Transclean then filed a separate patent infringement suit against Jiffy Lube International, Inc. ("Jiffy Lube") and more than thirty other fast lube businesses, each of which had purchased one or more T-Tech machines from Bridgewood.  That case is the subject of the present appeal.

In this case, the district court granted summary judgment in favor of Jiffy Lube and eight other defendants ("Participating Defendants"), holding that under the doctrine of claim preclusion, the judgment against Bridgewood bars Transclean from bringing a separate infringement action against Bridgewood's customers.  The district court previously had entered default judgment in favor of Transclean against several other defendants ("Defaulting Defendants"), none of whom had answered the complaint.  Because we agree with the district court that under the doctrine of claim preclusion

06-1077                                             2

Transsclean may not obtain relief against the Participating Defendants, we affirm that portion of the district court's judgment. In light of that affirmance, we conclude that the claims against the Defaulting Defendants should be disposed of in the same manner; accordingly, the judgment in favor of Transsclean and against the Defaulting Defendants is reversed.

BACKGROUND

Viken, Lang, and Johnson are the owners of U.S. Patent No. 5,318,080 ("the '080 patent"); Transsclean is their exclusive licensee. The patent is directed to an apparatus for changing automatic transmission fluid. In October 1997, Transsclean filed a patent infringement suit in the United States District Court for the District of Minnesota against Bridgewood, a manufacturer and distributor of transmission service equipment. Soon thereafter, Bridgewood sold its assets to Century Manufacturing Company, which took a license from Transsclean under the '080 patent for T-Tech machines sold on or after May 1, 1998. Any T-Tech machines manufactured before that date remained the subject of litigation between Transsclean and Bridgewood.

This court's opinion in <u>Transsclean I</u> discusses the Bridgewood litigation in detail; here we provide only the facts of that case that are relevant to the present appeal. With regard to liability issues, the trial court in the Bridgewood litigation granted Transsclean's motion for summary judgment that Bridgewood infringed claims 1-4 and 12 of the '080 patent, after barring Bridgewood from asserting it did not infringe as a sanction for Bridgewood's failure to answer an interrogatory seeking the bases for its non-infringement position. When the case proceeded to trial, a jury found that Bridgewood infringed claim 13. On appeal we affirmed the judgment of infringement of claims 1-4

and 12, but after correcting the claim construction we vacated the judgment of infringement of claim 13. Transclean I, 290 F.3d at 1373-75.

With regard to damages, the jury in the Bridgewood case awarded Transclean three types of damages totaling $5.5 million. Id. at 1375. The trial court granted Bridgewood's motion for a new trial or remittitur in the amount of $1,874,500, the highest amount of reasonable royalty damages that the jury could have awarded based on the evidence. Id. at 1375. Transclean apparently accepted the remittitur, and neither party appealed that portion of the damages award. Id. Transclean alleges it has not collected on the judgment against Bridgewood.

Soon after this court affirmed the judgment against Bridgewood, Transclean filed the current infringement suit in the District of Minnesota, this time against Jiffy Lube and more than thirty other fast lube businesses, including many small, independently owned shops that use a single T-Tech machine. In this case, the subject of the present appeal, Transclean alleges that the defendants infringe the '080 patent by using T-Tech machines purchased from Bridgewood prior to May 1, 1998. Thus the accused devices in this case were also the subject of the suit against Bridgewood. Transclean seeks a "reasonable royalty" of $10,000 for the use of each allegedly infringing device.

Several defendants failed to answer the complaint, and Transclean filed a motion for default judgment against them. The trial court granted the motion in part, ordering entry of default judgment and a permanent injunction against those defendants but

finding that it was premature to enter a default damages award at that time.  Transclean

Corp. v. Bill Clark Oil Co., No. 02-1138 (D. Minn. Nov. 5, 2003) (order).[1]

Transclean, Jiffy Lube, and some of the other Participating Defendants[2] filed

various motions for summary judgment, most of which alleged that the judgment in the

Bridgewood litigation had some preclusive effect.  Transclean filed a motion for

summary judgment in which it argued that the defendants in this case should be

precluded from asserting a non-infringement defense because the Bridgewood litigation

concluded with a judgment of infringement by the same T-Tech machines.  As part of its

argument that issue preclusion applied, Transclean asserted that the defendants were

in privity with Bridgewood.  The trial court denied Transclean's motion on the ground

that the issue of infringement was not actually litigated in the Bridgewood litigation

because the infringement determination in that case was in large part a sanction for

abuse of discovery.  Transclean Corp. v. Reg'l Car Wash Distribs., Inc., No. 02-1138,

2004 WL 1453509, at *7-8 (D. Minn. June 18, 2004).

In the same opinion, the trial court granted Jiffy Lube's motion for summary

judgment that Transclean was precluded from bringing infringement claims against Jiffy

Lube.  The trial court concluded that the elements of claim preclusion were satisfied.

First, there was no dispute that the Bridgewood litigation ended in a final judgment on

---

[1]     In that order, the trial court entered default judgment against Defendants 13 North Express Lube, Inc.; Bill Clark Oil Co., Inc.; Royal Lube and Service, Inc.; Spots Quik Lube, Inc.; White Bear Tire & Auto, Inc.; and two others that were later dismissed from the case.  In subsequent orders, the trial court entered default judgment against Ultra Lube and Bob Clemons (doing business as Wonder Lube).

[2]     In addition to Jiffy Lube, the Participating Defendants are Regional Car Wash Distributors, Inc.; Walt Gislason (doing business as Walt's Soft Car Wash); Mike's In and Out 10 Minute Oil Change; Indy Lube, Inc.; Fresh Start, Inc.; Lubrication Technologies, Inc.; Layne R. Base (doing business as Heartland Express Lube); and Perfect "10" Quick Lube, Inc.

the merits or that the court properly exercised jurisdiction in that matter. Nor did Transclean dispute that Jiffy Lube was in privity with Bridgewood, the defendant in the prior litigation. Finally, Transclean did not dispute that during the first litigation it was aware of Jiffy Lube's use of T-Tech machines and could have brought claims against Jiffy Lube. Id. at *2. The trial court noted, however, that summary judgment based on claim preclusion was not appropriate as to other defendants until they came forward with evidence that Transclean knew or should have known about them during the Bridgewood litigation. Id. at *3.

Transclean later conceded it was aware that each of the Participating Defendants had purchased and used at least one T-Tech machine while the Bridgewood litigation was pending. In response thereto, the trial court granted summary judgment in favor of the Participating Defendants. Transclean Corp. v. Bill Clark Oil Co., No. 02-1138, 2004 WL 2730101, at *2 (D. Minn. Nov. 18, 2004).

When Transclean moved for a determination of damages against the Defaulting Defendants—the trial court having earlier rendered judgment against them—the trial court sua sponte raised the defense of issue preclusion on their behalf. Transclean Corp. v. Bill Clark Oil Co., Inc., No. 02-1138, 2005 WL 2406036, at *2 (D. Minn. Sept. 29, 2005) ("Damages Opinion"). The trial court held that Transclean was precluded from seeking a $10,000 royalty for the use of each infringing machine because that theory was not presented in the Bridgewood litigation. Accordingly, the court limited the damages award to $550 per infringing T-Tech machine, the amount awarded in the

Bridgewood litigation.[3] Id. at *3.  The trial court then awarded Transclean treble damages under 35 U.S.C. § 284 because the Defaulting Defendants did not respond to Transclean's allegations of willful infringement.  This resulted in a damages award of $1,650 against each of the Defaulting Defendants.  Id. at *3.

The trial court entered judgment in accordance with its various decisions. Transclean appeals from that judgment, challenging the trial court's rulings that claim preclusion bars Transclean's suit against the Participating Defendants and that issue preclusion limits the amount of damages recoverable from the Defaulting Defendants. We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(1).

DISCUSSION

I.  Participating Defendants

Transclean's primary argument against the application of claim preclusion as a bar to its infringement claims against the Participating Defendants is that the law generally allows a patentee to sue manufacturers or sellers and users of an infringing device as joint tortfeasors, and that the law permits multiple suits, just not multiple (i.e., double) recoveries.  This rule has its genesis in Birdsell v. Shaliol, 112 U.S. 485 (1884), in which the Supreme Court held that a patentee who had recovered only nominal damages against the manufacturer of an infringing product could subsequently sue users of the infringing product.  The Court indicated that a patentee may not sue users of an infringing product for damages if he has collected actual damages from a manufacturer or seller, and those damages fully compensate the patentee for

---

[3]     The trial court arrived at this figure by dividing $1,874,500, the total damages award in the Bridgewood litigation, by 3400, the number of T-Tech machines sold by Bridgewood.

infringement by users.  Id. at 488-89; see also Glenayre Elecs., Inc. v. Jackson, 443 F.3d 851, 864 (Fed. Cir. 2006) (citing Birdsell and holding that a patentee could not sue users for damages because actual damages covering the use of the product had already been recovered from the manufacturer); Shockley v. Arcan, Inc., 248 F.3d 1349, 1364 (Fed. Cir. 2001) ("Each joint tort-feasor is liable for the full amount of damages (up to a full single recovery) suffered by the patentee." (citing Birdsell, 112 U.S. at 488-89)).

In light of Birdsell and its progeny, Transclean contends it is free to sue users of the T-Tech machine because it has not collected on the judgment against Bridgewood. That is true as far as it goes, but Transclean's argument fails to take into account the separate issue of claim preclusion, under which such a second suit, otherwise available, may be barred.  As the trial court correctly noted, the issue in this case is not whether Transclean may sue both the manufacturer and users of the T-Tech machine.  The issue is whether, having failed to bring infringement claims against the users in the first litigation, Transclean should be barred under the doctrine of claim preclusion from bringing those claims in a second suit.  "[A] plaintiff who chooses to bring two separate actions against two tortfeasors who are jointly responsible for the same injury runs the risk that the court will find the parties sufficiently related that the second action is barred by claim preclusion."  Mars Inc. v. Nippon Conlux Kabushiki-Kaisha, 58 F.3d 616, 620 (Fed. Cir. 1995).  Despite Transclean's protestations to the contrary, Birdsell and the other cases relied on by Transclean involve only the doctrine of full compensation.  See Glenayre, 443 F.3d at 862-64; 7 Donald S. Chisum, Chisum on Patents § 20.03[7][b][iii] (2002).  They do not address the added question of when and how claim preclusion may arise in such second suits.

We now turn to that question—whether claim preclusion principles bar Transclean's claims against the Participating Defendants in this case. As an initial matter, the parties disagree about whether the claim preclusion issues in this case should be decided under the law of the Federal Circuit or the applicable regional circuit, here the Eighth Circuit. Transclean argues that the question before us is specific to patent law—whether a patentee may sue the users of an infringing device when it cannot recover on a judgment awarded against the manufacturer of the same infringing device. As discussed, that question and the cases relied on by Transclean do not relate to claim preclusion but instead involve the doctrine of full compensation.

Rather, as we shall explain, the key question before us is whether Transclean should be bound by its repeated statements that the defendants were in privity with Bridgewood, against whom Transclean obtained a judgment in an earlier litigation. This question is not one peculiar to patent law, and therefore we will look to Eighth Circuit law for guidance in deciding the issue. See Mars, 58 F.3d at 618 (looking to regional circuit law to determine whether claim preclusion may be invoked by corporate parent following patent infringement judgment against wholly owned subsidiary).

Under the doctrine of claim preclusion in the Eighth Circuit, an earlier suit bars a party from asserting a claim in a later suit if (1) the first suit resulted in a final judgment on the merits; (2) the prior judgment was rendered by a court of competent jurisdiction; (3) both suits involve the same cause of action; and (4) both suits involve the same parties or their privies. Banks v. Int'l Union Elec., Elec., Technical, Salaried & Mach. Workers, 390 F.3d 1049, 1052 (8th Cir. 2004). Two suits are based on the same cause

of action if they arise out of the same nucleus of operative facts. Id. The parties do not dispute that the first two elements are satisfied.

Transclean argues in its briefs that its cause of action against the Participating Defendants is different from its cause of action in the Bridgewood litigation. In the earlier case, according to Transclean, Bridgewood was accused of infringing the '080 patent by *making and selling* T-Tech machines. Here, in contrast, Transclean alleges that the defendants infringe by *using* T-Tech machines. However, this case concerns the same patent and the exact same devices that were the subject of the Bridgewood litigation. There is little doubt that a second suit against Bridgewood itself for using the same T-Tech machines that were the subject of the earlier infringement judgment would involve the same cause of action as the prior litigation under the doctrine of claim preclusion. Indeed, Transclean's attorney conceded this point at oral argument.

In our view, the real question is whether the relationship between the defendants and Bridgewood was so close that they were in privity for claim preclusion purposes. If the answer is yes, it would follow that the case before us involves the same cause of action as the Bridgewood litigation, and Transclean would be precluded from maintaining the claims in this suit. Thus, in the context of this case, we need not decide whether infringement by making and selling a patented invention and infringement by using the patented invention generally involve the same cause of action; the privity issue answers the question for us.

The issue of privity was not in dispute before the trial court because Transclean admitted several times that the defendants in this case were in privity with Bridgewood. In its amended complaint, Transclean alleged that the defendants were bound by the

infringement judgment in the Bridgewood litigation.  To support this claim, Transclean took the position that issue preclusion principles barred the defendants from relitigating the infringement issue.  Accordingly, Transclean asserted in an interrogatory answer that Jiffy Lube and Bridgewood were in privity because Jiffy Lube purchased infringing T-Tech machines manufactured by Bridgewood.  Transclean continued to press its issue preclusion theory in a summary judgment motion, alleging again that the defendants were in privity with Bridgewood.  As Transclean put it, Bridgewood and the defendants in this case are "closely related" and have an "identical interest in defeating Transclean's infringement allegations and invalidating the '080 Patent."  J.A. at 895.

Having already alleged that the defendants and Bridgewood were in privity when it argued that issue preclusion barred the defendants from raising a non-infringement defense, Transclean apparently felt compelled to admit that the parties were also in privity for claim preclusion purposes.  Significantly, in its opposition to Jiffy Lube's motion for summary judgment, Transclean admitted that for purposes of claim preclusion Jiffy Lube and Bridgewood "are in privity because Bridgewood was a manufacturer of the infringing product and Jiffy Lube is a user of the same infringing product."  J.A. at 670.  And in its appeal brief to this court, Transclean expressly stated that the "first [i.e., privity] element [of claim preclusion] is met.  As the District Court noted, and as they admitted themselves, the Participating [Defendants] have a 'special . . . relationship' of privity with Bridgewood."  Appellant's Br. at 25.  Only in its reply brief and at oral argument did Transclean begin to retreat from its position that privity exists between Bridgewood and the Participating Defendants, at least insofar as it would bar through claim preclusion Transclean's infringement claims.

The term 'privity' is a label that expresses the conclusion that a particular nonparty in earlier litigation should be treated the same as a party to that litigation for claim preclusion purposes. Mars, 58 F.3d at 619. In the Eighth Circuit, privity exists when the parties are "so closely related" and their interests are "so nearly identical" that "it is fair to treat them as the same parties for purposes of determining the preclusive effect" of the first judgment. Ruple v. City of Vermillion, 714 F.2d 860, 862 (8th Cir. 1983).

It is important to recognize that under this standard, a manufacturer or seller of a product who is sued for patent infringement typically is not in privity with a party, otherwise unrelated, who does no more than purchase and use the product. Cf. Mars, 58 F.3d at 619 (concluding that corporate parent and its wholly owned subsidiary, defendants in separate patent infringement suits, were in privity for claim preclusion purposes). In other words, ordinarily such parties are not so closely related and their litigation interests are not so nearly identical that a patentee's suit against one would bar a second action against the other under the doctrine of claim preclusion.

The question facing us, therefore, is how to treat Transclean's representations that Bridgewood, the manufacturer and seller of the T-Tech machine, was in privity with its customers when the actual circumstances do not necessarily support that conclusion. Transclean made a tactical decision to admit that such a "special relationship" existed, first in connection with its issue preclusion argument and then for purposes of claim preclusion as well. Should Transclean be bound by its litigation strategy—its concession that Bridgewood and its customers were in privity?

The Participating Defendants argue that Transclean's admission is binding because privity is a question of fact that can be admitted. While there is a split of authority as to whether privity is a question of law or fact, see L & S Indus., Inc. v. Williams, 989 F.2d 929, 932 (7th Cir. 1993) (citing cases from different circuits), the Eighth Circuit has treated privity as a factual question, see Kolb v. Scherer Bros. Fin. Servs. Co., 6 F.3d 542, 544 (8th Cir. 1993). As previously explained, privity was not disputed before the trial court—Transclean agreed with the defendants that they were in privity with Bridgewood for purposes of claim preclusion. Because there were no disputed issues of material fact with respect to privity or any other elements of claim preclusion, the trial judge correctly granted summary judgment on the claim preclusion issue in view of the record before him, including Transclean's repeated admissions that Bridgewood and the defendants in this case were in privity. See Fed. R. Civ. P. 56(c); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986).

Transclean, relying on its argument that under Birdsell it could sue Bridgewood's customers since it had not collected on the judgment against Bridgewood, initially believed it could avoid the application of claim preclusion even though it conceded the existence of privity between Bridgewood and its customers. Apparently recognizing the problem with that position, Transclean now contends in its reply brief that privity cannot be admitted because it is a question of law and that we are free to determine that Bridgewood and the Participating Defendants were not in privity if that conclusion is supported by the actual facts. However, even if Transclean is correct that the issue should be characterized as a legal conclusion, we think Transclean should be bound by its concession under the doctrine of judicial estoppel.

"The doctrine of judicial estoppel prohibits a party from taking inconsistent positions in the same or related litigation. The underlying purpose of the doctrine is 'to protect the integrity of the judicial process.'" <u>Hossaini v. W. Mo. Med. Ctr.</u>, 140 F.3d 1140, 1142-43 (8th Cir. 1998) (citations omitted); <u>see also</u> <u>Key Pharms. v. Hercon Labs. Corp.</u>, 161 F.3d 709, 715 n.1 (Fed. Cir. 1998) (collecting cases and other relevant authority). Judicial estoppel is an equitable doctrine that may be invoked by a court at its discretion. <u>New Hampshire v. Maine</u>, 532 U.S. 742, 750 (2001). The Supreme Court recently acknowledged the viability of the doctrine and identified several non-exclusive factors that guide a court's decision whether to apply judicial estoppel: (1) the party's later position must be "clearly inconsistent" with its earlier position; (2) the party must have succeeded in persuading a court to adopt the earlier position, thereby posing a "risk of inconsistent court determinations"; and (3) "the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped." <u>Id.</u> at 750-51.

While some circuits have limited application of judicial estoppel to inconsistent factual assertions, others have applied the doctrine to legal conclusions as well. <u>See</u> 18 James Wm. Moore et al., <u>Moore's Federal Practice</u> § 134.30 (3d ed. 2006). The Eighth Circuit has not specifically addressed whether judicial estoppel extends to legal positions, but the majority of circuits that have spoken on the issue have either squarely held that the doctrine may be applied to inconsistent legal positions or indicated that the doctrine would apply to questions of law, or at least the application of law to fact. <u>See</u> Kira A. Davis, Note, <u>Judicial Estoppel and Inconsistent Positions of Law Applied to Fact and Pure Law</u>, 89 Cornell L. Rev. 191, 202-08 (2003). In particular, the Federal Circuit

has stated that a party may be judicially estopped from asserting clearly inconsistent positions on claim construction, which is a question of law. See Interactive Gift Express, Inc. v. Compuserve Inc., 256 F.3d 1323, 1346 (Fed. Cir. 2001); Key Pharms., 161 F.3d at 715. In the absence of Eighth Circuit law to the contrary, we conclude that judicial estoppel may be applied to the question of privity, whether considered a legal conclusion or a question of fact.

In this case, we find it appropriate to invoke judicial estoppel to hold Transclean to its concession that Bridgewood and its customers were in privity for claim preclusion purposes. The determination Transclean asks us to make—that Bridgewood and the defendants were not in privity for claim preclusion purposes—is clearly inconsistent with the position it advocated before the trial court and in its opening brief on appeal. The trial court accepted Transclean's admission of privity, and the defendants relied on that admission during both the trial and appellate phases of this litigation. As part of its litigation strategy, Transclean made the choice to concede privity between Bridgewood and its customers after choosing not to join the customers in the first litigation. Under the circumstances presented by this case, we believe Transclean should be held to the consequences of its choices. Transclean should not be permitted to reverse course this late in the proceedings simply because it now realizes its litigation strategy was unsuccessful. Accordingly, we affirm the trial court's grant of summary judgment in favor of the Participating Defendants.

## II. Defaulting Defendants

The trial court granted judgment in favor of Transclean and against the Defaulting Defendants at a time before the merits of the suit had been aired, and before the claim preclusion issues had been fully litigated. The trial court subsequently applied issue preclusion to limit the award of damages against the Defaulting Defendants, awarding an amount lower than Transclean believed it was entitled to. That issue is before us on appeal. We need not decide the measure of damages issue, however, because we believe that Transclean's claims against the Defaulting Defendants should be barred by claim preclusion just as Transclean's claims against the Participating Defendants were barred.

Although the Defaulting Defendants did not plead claim preclusion as an affirmative defense, preclusion issues may be raised by a court sua sponte. This is precisely what the trial court in this case did when it raised the defense of issue preclusion on behalf of the Defaulting Defendants in determining the damages award against them. Although the general rule is that claim preclusion and issue preclusion must be pleaded, an exception exists where all relevant data and legal records are before the court and the demands of "comity, continuity in the law, and essential justice" mandate invocation of preclusion principles. Damages Opinion, 2005 WL 2406036, at *2 (citing Warnock v. Pecos County, Tex., 116 F.3d 776, 778 (5th Cir. 1997)). The trial court found that these interests weighed in favor of applying issue preclusion to the Defaulting Defendants.[4]

---

[4] We note that Transclean's appeal on issue preclusion addresses only the merits; it does not challenge the trial court's decision to invoke issue preclusion in the first place.

We conclude that claim preclusion should be invoked in favor of the Defaulting Defendants for essentially the same reasons the trial court invoked issue preclusion on their behalf. See Columbia Steel Fabricators, Inc. v. Ahlstrom Recovery, 44 F.3d 800, 802-03 (9th Cir. 1995) (applying claim preclusion sua sponte to non-appearing defendant). Transclean admitted that all the defendants in this case were in privity with Bridgewood because they purchased T-Tech machines from Bridgewood. Transclean never distinguished between the Participating Defendants and the Defaulting Defendants when it conceded privity; its later statements about privity focused on the Participating Defendants only because the trial court had already entered default judgment against the Defaulting Defendants. Transclean had a full and fair opportunity to present its arguments on privity and claim preclusion, and those arguments would not be any different with respect to the Defaulting Defendants than they are with respect to the Participating Defendants. It would be anomalous to preclude Transclean's claims against one group of defendants while allowing recovery from a second group of defendants when, as a result of Transclean's admission regarding privity, the elements of claim preclusion are satisfied for both groups. Under these circumstances, we believe that as a matter of law and fairness claim preclusion should bar Transclean's infringement claims against the Defaulting Defendants as well as those against the Participating Defendants.[5] Accordingly, the judgment against the Defaulting Defendants is reversed.

---

[5] When applying claim preclusion to the Participating Defendants, the trial court was concerned with whether Transclean was or should have been aware of each defendant's use of the T-Tech machine during the pendency of the Bridgewood litigation. We think it unnecessary to make that determination for each of the Defaulting Defendants because the inquiry is subsumed in the privity issue.

COSTS

Each party shall bear its own costs.


## AFFIRMED-IN-PART and REVERSED-IN-PART