NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

2008-3012, -3015

JEFFREY R. HOLST,

Petitioner,

v.

DEPARTMENT OF VETERANS AFFAIRS,

Respondent.

Thomas D. Hobart, Meardon, Sueppel & Downer P.L.C., of Iowa City, Iowa, for petitioner.

David A. Harrington, Trial Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, of Washington, DC, for respondent. With him on the brief were Gregory G. Katsas, Assistant Attorney General, Jeanne E. Davidson, Director, and Donald E. Kinner, Assistant Director.

Appealed from: Merit Systems Protection Board

NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

2008-3012, -3015

JEFFREY R. HOLST,

Petitioner,

v.

DEPARTMENT OF VETERANS AFFAIRS,

Respondent.

Petitions for review of the Merit Systems Protection Board in CH0752050603-C-1 and CH0752060678-I-1.

_____

DECIDED: November 7, 2008

_____

Before MICHEL, <u>Chief Judge</u>, CLEVENGER and MOORE, <u>Circuit Judges</u>.

PER CURIAM.

Jeffrey R. Holst appeals a final decision of the Merit Systems Protection Board (MSPB or the Board) affirming his demotion. <u>See</u> MSPB Docket Nos. CH0752060678-I-1 and CH0752050603-C-1. We <u>affirm</u>.

BACKGROUND

Mr. Holst was a police officer for the Iowa City Veterans Affairs Health Care System. In December 2003, Mr. Holst placed a confidential telephone call to the Veterans Affairs (VA or the agency) Inspector General detailing widespread misconduct in the Iowa City VA Medical Center Police Department. As a result of the call, several

officers—including Mr. Holst—were disciplined. Despite the presumed confidentiality of the call, it is undisputed that other officers became aware that Mr. Holst reported the misconduct.

In early January 2005, Mr. Holst's supervisor, Lt. Christopher Duncan, instructed Mr. Holst to report to a meeting on January 6, 2005 to discuss a round of ammunition assigned to Mr. Holst that was temporarily unaccounted for. Mr. Holst did not report to the meeting at the scheduled time. He then ignored an order from the Chief of Police, Paul George, to report to the meeting. When he later realized that Mr. Holst had not followed his order, Chief George escorted Mr. Holst to the meeting. At the meeting, Mr. Holst refused to sit down or to answer any of Lt. Duncan's questions, which prompted Mr. Holst's union representative to request a delay to allow Mr. Holst to speak with the union president. When the union president arrived, Mr. Holst left without speaking to him.

When Mr. Holst did not return to the meeting, Lt. Duncan contacted him three times on his radio and ordered him to return. Mr. Holst ignored the first order. He responded to the second order by telling Lt. Duncan: "I heard you." Mr. Holst responded to the third order by telling Lt. Duncan that he was waiting to talk to someone who was currently in another meeting. When Mr. Holst finally returned with another agency employee, Lt. Duncan ordered Mr. Holst to secure his firearm in a gun locker. Mr. Holst refused the order and instead aggressively questioned why he should do so. At that point, Chief George ordered Mr. Holst to secure his firearm. Mr. Holst complied with the Chief's order and then answered Lt. Duncan's questions regarding the missing round of ammunition. Following the meeting, Mr. Holst was placed on leave for the rest

of the day and ordered to write a report detailing the facts surrounding the missing round of ammunition. As of January 14, 2005, following several orders to turn in the report, Mr. Holst still had not done so.

As a result of Mr. Holst's erratic conduct at the meeting, a VA human resources officer requested a fitness for duty evaluation of Mr. Holst. Based upon a series of evaluations, Chief George proposed Mr. Holst's removal on February 17, 2005. The removal was approved by the director of the VA medical center. Mr. Holst appealed the VA's removal decision to the Board, which conducted a hearing and evaluated various psychiatric opinions without addressing any charges of misconduct. The Board concluded that the psychiatric evidence submitted by the VA failed to establish that Mr. Holst was unfit to perform his duties as a police officer, and ordered the VA to vacate Mr. Holst's removal, to retroactively restore Mr. Holst to his position, and to pay Mr. Holst the "appropriate amount of back pay." The agency did not appeal this decision.

On May 1, 2006, Mr. Holst reported for duty and requested leave, which was granted. When Mr. Holst returned from leave, Chief George proposed his removal based upon eight disciplinary charges stemming from Mr. Holst's behavior surrounding the January 6 meeting as well as his use of his position as a VA police officer to obtain a permit to carry a pistol. Peter Henry, the new acting medical center director, sustained five of the charges—three charges involving insubordination or disrespectful conduct and two charges involving violation of agency standards of conduct—and reduced the penalty from removal to demotion.

Mr. Holst appealed the demotion to the Board, which affirmed the demotion. The Board also determined that the VA had complied with the Board's previous order to

reinstate Mr. Holst. Mr. Holst appeals the Board's decision, and asserts that the Board erred in: (1) allowing the agency to bring the demotion action that (a) constituted noncompliance with the Board's previous order to reinstate Mr. Holst and (b) should have been barred under the principle of res judicata; (2) failing to properly apply the Douglas factors; and (3) finding that the demotion was not in retaliation for whistleblowing. We have jurisdiction under 28 U.S.C. § 1295(a).

DISCUSSION

Our review of a decision by the MSPB is governed by 5 U.S.C. § 7703(c), which directs us to set aside MSPB actions, findings, or conclusion found to be: "(1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (2) obtained without procedures required by law, rule, or regulation having been followed; or (3) unsupported by substantial evidence."

The VA was not precluded from bringing the demotion action. First, the demotion action did not violate the Board's previous order to reinstate Mr. Holst. The record shows that Mr. Holst was reinstated on May 1, 2006, when he reported for duty and requested leave, which was granted. The Board's previous order to reinstate Mr. Holst because he was not mentally unfit does not address whether the agency is permitted to punish the underlying insubordinate conduct.

Second, the principal of res judicata did not preclude the agency from demoting Mr. Holst. "Under the doctrine of res judicata, a judgment on the merits in a prior suit bars a second suit involving the same parties or their privies based on the same cause of action. " Parklane Hosiery Co. v. Shore, 439 U.S. 322, 327 n.5 (1979). "Two suits are based on the same cause of action [only] if they arise out of the same nucleus of

operative facts." <u>Transclean Corp. v. Jiffy Lube Int'l, Inc.</u>, 474 F.3d 1298, 1304-05 (Fed. Cir. 2007). Accordingly, the demotion action is not barred unless it arose out of the same nucleus of operative facts as the previous removal appeal. It did not.

The initial removal action was based on a determination that Mr. Holst was mentally unfit to carry a firearm. The Board considered factual allegations that were limited to the psychiatric reports and testimony related to Mr. Holst's mental stability and did not include the misconduct or insubordination during the meeting. The factual allegations in the current demotion action—i.e., allegations regarding Mr. Holst's insubordination—are therefore distinct from the factual allegations of the previous removal action—i.e., allegations regarding Mr. Holst's mental fitness. The agency was not prohibited from bringing the demotion action which is based on distinct factual allegations.

The administrative judge (AJ) properly considered the <u>Douglas</u> factors in determining that Mr. Holst's demotion was appropriate. In determining the reasonableness of a penalty imposed by an agency, the Board applies the twelve <u>Douglas</u> factors. <u>Douglas v. Veterans Admin.</u>, 5 M.S.P.R. 280, 305-06 (1981). We give deference to the agency's judgment unless a penalty violates a statute or regulation or is "so harsh and unconscionably disproportionate to the offense that it amounts to an abuse of discretion." <u>Villela v. Dep't of the Air Force</u>, 727 F.2d 1574, 1576 (Fed. Cir. 1984).

The AJ affirmed the agency's determinations that Mr. Holst's repeated failures to obey direct orders from his supervisors—particularly his failure to obey Lt. Duncan's orders to disarm—constituted insubordination and that Mr. Holst used his position with

the VA for private gain in obtaining a carry permit. The AJ then acknowledged the importance of the <u>Douglas</u> factors and analyzed the demotion action in light thereof. In weighing these factors, the AJ noted that the deciding officer, Mr. Henry, testified that a failure to follow orders is "intolerable in a police setting and would support a removal action," and that the penalty for a first insubordination offense according to the VA handbook may range from reprimand to removal. It was not an abuse of discretion for the Board to sustain the demotion action.

Finally, the AJ correctly found that Mr. Holst was not demoted in retaliation for his whistleblowing. This court has:

> interpreted the [Whistleblower Protection Act] to require proof of four elements to establish a violation of section 2302(b)(8): "(1) the acting official has the authority to take, recommend, or approve any personnel action; (2) the aggrieved employee made a disclosure protected under section 2302(b)(8); (3) the acting official used his authority to take, or refuse to take, a personnel action against the aggrieved employee; (4) the acting official took, or failed to take, the personnel action against the aggrieved employee because of the protected disclosure."

<u>Lachance v. White</u>, 174 F.3d 1378, 1380 (Fed. Cir. 1999) (citations omitted). "After an employee establishes that a protected disclosure was a contributing factor, the agency must prove by clear and convincing evidence that it would have taken the action to remove the employee, even in the absence of the protected disclosure." <u>Kewley v. Dep't of Health & Human Servs.</u>, 153 F.3d 1357, 1364 (Fed. Cir. 1998).

The Board found that Mr. Holst had made a protected disclosure and that the "protected disclosure was a contributing factor to this demotion action." However, the Board then found that the agency established by clear and convincing evidence that Mr. Holst's misconduct was so severe that he had to be demoted from his position as a police officer, and that the agency would have demoted Mr. Holst absent his protected

disclosure. Upon review of the full record in this case, we conclude there was substantial evidence to support the Board's conclusion that the agency would have taken the demotion action against Mr. Holst even if he had not engaged in whistleblowing. There was testimony from Chief George that he would have taken the same action absent the whistleblowing. Trial Tr. 87:6-8 (Q: "If he had not been a whistleblower, would you still have proposed the same discipline?" A: "Oh, yes."). There was also testimony from Mr. Henry that he actually reduced the penalty from removal to demotion because of Mr. Holst's status as a whistleblower. Id. 128:20-23 (Q: "So you would have made the same decision if he hadn't been a whistleblower?" A: "I'm not sure I'd say that. I might have just let the removal go through. . . ."). In light of this evidence, we conclude there was substantial evidence to support the Board's conclusions in this case.

For the foregoing reasons, we affirm the final decision of the Board.

COSTS

No costs.